UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATIONAL FUEL GAS SUPPLY
CORPORATION,

                    Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                                   12-CV-034S

TOWN OF WALES and the TOWN BOARD of
the TOWN OF WALES,

                    Defendants.

## I.  INTRODUCTION

Plaintiff, National Fuel Gas Supply Corporation, brings this action against Defendant, the Town of Wales, alleging that the Town and its board interfered with National Fuel's federal rights regarding construction of a natural gas compressor station in the Town.

National Fuel seeks a declaratory judgment and injunctive relief; it also asserts that the Town's actions constitute a regulatory taking and a deprivation of National Fuel's due process rights. The Town presently moves to dismiss all claims against the Town Board and the two constitutional claims as against the Town. (Docket No. 10.) For the following reasons, the Town's motion is granted in full.

## II. BACKGROUND

A.     Facts[1]

In furtherance of its "Northern Access Project," National Fuel planned to build a compressor station in the Town of Wales, New York.[2] (Am. Compl. ¶ 7; Docket No. 6.) To that end, in March of 2011, National Fuel filed an application with the Federal Energy and Regulatory Commission ("FERC") for a Certificate of Public Convenience ("Certificate"). (Id.) Under the Natural Gas Act, such a certificate is a prerequisite to construction. See 15 U.S.C. § 717f(c)(1)(A). The compressor station, which ensures that gas remains pressurized as it travels through interstate pipelines, was to be constructed adjacent to an existing meter station.[3]  (Am Compl., ¶ 10; Docket No. 6.)

Around July of  2011, however, the Town informed National Fuel that it would require a Special Use Permit ("Permit") before it would allow National Fuel to begin construction. (Id., ¶ 11.)   According to National Fuel, "immediately thereafter, as a matter of cooperation, and in attempt to accommodate the local zoning process," it began the Permit application process. (Id., ¶ 12.)

As part of that process, National Fuel submitted an Environmental Assessment Form, released an Environmental Assessment for public review, conducted a noise survey,

---

[1]Facts alleged in National Fuel's amended complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[2]The project intends to "increase National Fuel's capability to transport Pennsylvania-produced Marcellus Shale gas to the TransCanada Pipeline at Niagara." http://www.natfuel.com/supply/NorthernAccess/default.aspx

[3]According to www.naturalgas.org, "compression of [] natural gas is required periodically along the pipe. This is accomplished by compressor stations, usually placed at 40 to 100 mile intervals along the pipeline." http://www.naturalgas.org/naturalgas/transport.asp

and discussed the compressor station at various town board meetings. In the meantime,

on October 20, 2011, the FERC issued the Certificate. (Id., ¶ 30.) It included the following

noise limitation:

> If the noise attributable to the operation of the East Aurora
> Compressor Station at full load exceeds an $L_{dn}$ of 55 dBA at
> any nearby NSAs,[4] National Fuel shall file a report on what
> changes are needed and shall install additional noise controls
> to meet the level within one year of the in-service date.

(Id., ¶ 31.)

The FERC Certificate also instructs:

> National Fuel shall make all reasonable efforts to ensure its
> predicted noise levels form the East Aurora Compressor
> Station are not exceeded at nearby NSAs and file a noise
> survey showing this with the Secretary no later than 60 days
> after placing the East Aurora Compressor Station in service.

(Id.)

Finally, it provides:

> Any state or local permits issued with respect to the
> jurisdictional facilities authorized herein must be consistent
> with the conditions of this certificate. The Commission
> encourages cooperation between interstate pipelines and local
> authorities. However, this does not mean that state and local
> agencies may prohibit or unreasonably delay the construction
> or operation of facilities approved by this Commission.

(Id., ¶ 32.)

After issuance of the Certificate, National Fuel continued to work with the Town

regarding the Permit: its representatives attended meetings,  provided a tour of the site,

---

[4]NSA, an abbreviation used throughout the Certificate and the Permit, refers to Noise Sensitive Areas. dBA is shorthand for a method of measuring noise though decibels. $L_{dn}$ appears to refer to an average sound level.

and allowed an inspection of a similar compression station in Pennsylvania. (Id., ¶¶ 36–42.) At this inspection, on December 8, 2011, the Town representatives agreed that the noise from the station was not excessive. (Id., ¶ 43.)

Eventually the Town issued a preliminary Permit, but it was inconsistent with the Certificate. (Id., ¶ 45.) For example, Special Condition No. 3 of the proposed Permit required that the "noise related to the compressor unit venting shall be at a maximum of 45 dBA at the nearest NSA to the compressor station." (Id., ¶ 46.) This imposed a stricter requirement than Certificate's 55 dBA level. (Id.) Further, Special Condition No. 4 of the proposed Permit stated that "predicted noise levels from the compressor station shall not be exceeded at nearby NSAs." According to National Fuel, this is significantly more stringent than the Certificate's requirement that National Fuel "shall make all reasonable efforts" to ensure that the predicted noise levels are not exceeded at the nearby NSAs. (Id., ¶ 47.)

Negotiations continued, and on December 9, 2011, National Fuel proposed several changes to the Permit. (Id., ¶ 48.) Three days later the Town advised National Fuel that it was unwilling to (1) eliminate the Special Condition No. 3 requirement that the total sound level at the nearest NSA be no more than 45 dBA, or (2) revise Special Condition No. 4 to state that "all reasonable efforts" would be used to achieve the predicted noise levels from the Compressor Station. (Id., ¶ 49.)

On December 22, 2011, the Town issued the final Permit; it retained the objected-to requirements and also mandated that "[n]oise related to the compressor operation shall not exceed 3 dBA over background ambient noise." (Id., ¶ 51.)

The Town further required that National Fuel execute an "acknowledgment"

regarding a waiver of National Fuel's right to challenge the conditions contained in the Permit. (Id., ¶ 53.) After negotiating, the Town Board approved a revised acknowledgment, without the waiver, and signed the Permit on January 10, 2012.[5] (Id., ¶ 55.)

In the months following, the FERC granted National Fuel permission to begin construction of the compressor station, and the Town issued a building permit, which incorporated the Special Use Permit. (Id., ¶¶ 58–60.)

On April 23, 2012, National Fuel commenced construction on the compressor station.[6] (Id., ¶ 62.)

## B.    Procedural History

National Fuel filed a complaint in this Court in January 12, 2012. (Docket No. 1.) Several months later, on May 3, 2012, it amended its complaint. (Docket No. 6.)  On May 24, 2012, the Town moved to dismiss the amended complaint. (Docket No. 10.) Briefing on that motion concluded on June 21, 2012, at which time this Court took the motion under advisement.

## III.  DISCUSSION

## A.    Motion to Dismiss Standard – Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L.

---

[5]National Fuel filed this suit two days later, on January 12, 2012.

[6]There is no indication that the circumstances of this litigation have yet hindered construction.

Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. See Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are

identified and stripped away. See Id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

## B.   The Town's Motion to Dismiss

The Town does not move to dismiss National Fuel's amended complaint as it pertains to the declaratory judgment and injunctive relief actions as against the Town itself. It does argue, however, that National Fuel's due process and takings claims are subject to dismissal, and that the Town Board should be dismissed from the case. Each of these contentions will be discussed in turn.

### 1.   The Town Board

The Town contends that claims against the Town Board are duplicitive of those against the Town itself.

Typically, "in New York, a suit against a municipal legislative body is considered the functional equivalent of the suit against the municipality itself, since a plaintiff who prevails must look to the government entity as the real party in interest." Baines v. Masiello, 288 F. Supp. 2d 384, 384 (W.D.N.Y. 2003).  As such, "courts routinely dismiss . . . claims against a legislative body as redundant or duplicative of claims against the municipality itself." Id.

National Fuel, however, argues that the town board is a necessary party in this case. It relies on one case for this proposition,  Commco, Inc. v. Amelkin, which held that a town board is a necessary party "if the constitutionality or validity of its zoning ordinance is questioned."[7] 62 N.Y.2d 260, 265, 465 N.E.2d 314, 476 N.Y.S.2d 775 (1984). But Commco

---

[7] National Fuel cites two other cases, but those are found within the Commco opinion.

is inapposite for two reasons.

First, Commco was a state-court Article 78 proceeding. See N.Y. C.P.L.R. § 7801, *et seq*. Here, National Fuel asserts a § 1983 claim, and does not assert a claim under Article 78, which is "a unique state court avenue for plaintiffs to challenge administrative determinations" and is "designed specifically for the state courts." De Jesus v. City of New York, No.10 CIV. 9400 GBD, 2012 WL 569176, at *4 (S.D.N.Y. Feb. 21, 2012) (quoting Lucchese v. Carboni, 22 F. Supp. 2d 256, 258 (S.D.N.Y.1998)). National Fuel points to no authority holding that a town board is a necessary party in an action such as this.

Second, the Commco court's holding is restricted to those cases considering a zoning ordinance. The court held, "A town board is *only* a necessary party if the constitutionality or validity of its zoning ordinance is questioned." 62 N.Y.2d at 265 (emphasis added). Here, National Fuel questions the contents of the Special Use Permit, not a zoning ordinance. Commco, therefore, does not apply.

Instead, the general rule – that a suit against a municipal legislative body must be treated as a suit against the town itself – does apply, and the town board must be dismissed. See Schubert v. City of Rye, 775 F. Supp. 2d 689, 700 (S.D.N.Y. 2011) (dismissing city council as a redundant party); Omnipoint Commc'ns, Inc. v. Town of LaGrange, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (dismissing, as duplicitive, claims against town's buildings Department, planning board, and zoning board of appeals in suit against the town); Schwasnick v. Fields, No. 08-CV-4759(JS)(ARL), 2010 WL 2679935, at *4 (E.D.N.Y. June 30, 2010) (dismissing town board because "a lawsuit against the Town of Islip is sufficient to encompass a lawsuit against any of its departments"); Deperno v. Town of Verona, No. 6:10-CV-450 NAM/GHL, 2011 WL 4499293, at *9 (N.D.N.Y. Sept.

27, 2011) (dismissing town board as a redundant party). Accordingly, in this respect, the Town's motion is granted.

**2.    The Due Process Clause**

Section 1 of the Fourteenth Amendment, the Due Process Clause, provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." National Fuel contends that the Town deprived it of property in violation of that Clause.

"The most familiar office of that Clause," its procedural aspect, provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). It also has a substantive component, which protects against "certain government actions regardless of the fairness of the procedures used to implement them." Id. National Fuel alleges a violation of both the procedural and substantive aspects of the Due Process Clause. Each is discussed below.

*i.    Procedural Due Process*

"[T]o sustain an action for deprivation of property without due process of law, a plaintiff must 'first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.'" Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting Mehta v. Surles, 905 F.2d 595, 598 (2d Cir.1990)). Procedural "[d]ue process requires only that the state afford a party threatened with a deprivation of property a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged." Chase Grp. Alliance LLC v. City of New York Dep't of Fin., 620 F.3d 146, 151–52 (2d Cir. 2010).

National Fuel argues that the Town's delay in issuing the Permit – 86 days after it held a public hearing – and its issuance of an incompatible Permit, constitute a violation of its procedural due process rights. But National Fuel does not contend that it lacked notice or an opportunity to be heard before the alleged deprivation. Nor can it dispute the axiomatic principle that deprivations of property are not procedurally offensive if, in conjunction with pre-deprivation notice and an opportunity to be heard, state law provides for the availability of an adequate post-deprivation remedy. See Lucurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001). Here, there is no dispute that National Fuel could have availed itself of an Article 78 proceeding under New York law, but chose not to do so. The availability of such a mechanism forecloses the possibility of relief in this Court. See Brady, 863 F.2d at 211 (the plaintiffs "could have availed themselves of a state forum to review the constitutionality of the defendants' actions, but chose not to do so. Hence, we conclude that appellants' procedural due process claim is without merit"); Dellutri v. Vill. of Elmsford, No. 10-CV-01212 KMK, 2012 WL 4473268, at *17 (S.D.N.Y. Sept. 28, 2012) (collecting cases finding availability of Article 78 proceeding sufficient to defeat procedural due process claim); see also Masterpage Communications, Inc. v. Town of Olive, 418 F. Supp. 2d 66, 78 (N.D.N.Y. 2005) (dismissing procedural due process claim grounded in a town's delay because "[e]ven assuming the sixty-two day time period is applicable, because the Town held a public hearing, and [plaintiff] sought no relief between day 63 and the public hearing, there is no relief the Court can grant at this point to remedy that delay."). Accordingly, this claim is dismissed.

    ii.  *Substantive Due Process*

   To state a substantive due process claim, a plaintiff "must establish that he had a

valid 'property interest' in some benefit that was protectable under the Fourteenth Amendment" and that he was deprived of that benefit. Brady v. Town of Colchester, 863 F.2d 205, 212 (2d Cir. 1988) (citing Board of Regents v. Roth, 408 U.S. 564, 576–77, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Property interests, however, "are not created by the Constitution." Roth, 408 U.S. at 577. Rather, "[t]o determine whether a property interest in some benefit rises to the level of a right protectable under the Fourteenth Amendment, courts [] must look to . . . rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.; see also Oneida Indian Nation of N.Y. v. Madison County, 665 F.3d 408, 428 (2d Cir. 2011).

Further, the conduct of the defendant in denying the right must be "so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).

National Fuel argues that it has such a property right. In support of this contention, it points to the Natural Gas Act. Under the Act, the FERC has the exclusive jurisdiction to regulate natural gas facilities, and its regulations preempt state law. See 15 U.S.C. § 717f; Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n, 894 F.2d 571, 578 (2d Cir. 1990) (Natural Gas Act preempts New York State regulatory scheme); Islander E. Pipeline Co. Algonquin Gas Transmission Co., 102 F.E.R.C. ¶ 61054, 2003 WL 245811, at *27 (2003) ("If a conflict arises . . . between the requirements of a state or local agency and the Commission's certificate conditions, the principles of preemption will apply and the federal authorization will preempt the state or local requirements."). Although there is no dispute regarding preemption, it serves as the groundwork for National Fuel's principle argument, which is this: When the FERC issued the Certificate, it acted with exclusive jurisdiction and

peremptory powers over the compressor station; its actions thus created a vested property right allowing National Fuel to build the station according to the specifics of the Certificate. Therefore, any requirement of the Town that imposes stricter regulations (*e.g.*, reduced maximum sound levels) deprives it of that right and constitutes an abuse of governmental authority.

At the outset, the validity of this argument is indeterminate, as it is unclear whether the Certificate constitutes a protectable property interest. National Fuel, for instance, is unable to cite a single case holding as much.[8]

Moreover, it is unclear whether the claim is properly brought under the Due Process Clause, which is a last-resort measure. See Southerland v. City of New York, 680 F.3d 127, 142–43 (2d Cir. 2012) ("Where another provision of the Constitution provides an explicit textual  source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process") (internal citation and quotation marks omitted).

But, even assuming National Fuel could clear those hurdles, its claim must still fail because it does not allege that the Town's actions were "arbitrary and irrational." See Natale, 170 F.3d at 263; T.S. Haulers, Inc. v. Town of Riverhead, 190 F. Supp. 2d 455, 462 (E.D.N.Y. 2002) (finding a valid property interest, but continuing, "the Court must determine whether the plaintiffs have also adequately alleged that the denial of that permit was arbitrary or irrational").

Although not dispositive, it should be noted that National Fuel does not use the

---

[8]The Town, too, could find no such case, and contends none exist.

words "arbitrary," "abuse," or "irrational" in its complaint. Not until its memorandum of law does it begin to allege that the Town abused its authority, in such a way as to violate due process, by issuing a Permit inconsistent with the FERC Certificate. And even there, it does not go so far as to say that the Town's actions were arbitrary, but simply that the Town's actions "constitute an abuse of governmental authority." (See Mem. in Opp., at 10; Docket No. 12-1.)

   Considering the FERC's "exclusive jurisdiction" over facilities such as the compressor station, the Town may have overstepped its authority. But plain "abuse of authority," in itself, does not state a due process claim. Instead, the government must abuse its authority in a way that "shocks the conscience," and that "warrant[s] the labels 'arbitrary' and 'outrageous.'" Natale, 170 F.3d at 262 (citing Rochin v. California, 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 183 (1952), *overruled on other grounds by* Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)).  Nothing in the allegations here supports such a severe label. (Indeed, as suggested above, National Fuel itself appears hesitant to claim that an "outrageous" violation occurred.) Rather, the complaint paints a picture of two sophisticated entities negotiating at arms length for an extended period of time. The Town held at least six board meetings to discuss the issue; it visited a similar station in Pennsylvania; it held a public hearing, and it eventually granted National Fuel a building permit and allowed the gas company to build the compressor station, albeit under allegedly more restrictive parameters than the Certificate. Thus, the Town may have acted contrary to principles of preemption, but the factual allegations in the amended complaint do not support a contention that it acted wrongfully otherwise.

   So understood, National Fuel's argument is reduced to the proposition that issuance

-13-

of an incompatible permit is *per se* arbitrary and irrational. But, like its inability to cite any case finding that a FERC Certificate constitutes a protected property right, National Fuel again fails to point to any case ruling that a local municipality's failure to defer to the FERC violates that property right.[9] It is again forced to argue by analogy. Its proffered authority, however, is easily distinguished.

In Brady v. Town of Colchester, a zoning, land-use case, the Second Circuit found that resolution of this question – whether the defendant's actions were sufficiently arbitrary – should be left to the jury. 863 F.2d 205 (2d Cir. 1988). But it did so under very different circumstances. Plaintiffs there leased a building to the Borough of Colchester, a political entity within the Town of Colchester. Town officials then revoked plaintiffs' building permit and required plaintiffs to apply for various other permits allegedly necessary for plaintiffs to lease the building to the Borough. The Borough was Democratic, and the Town Republican, and the two had been involved in a number of political disputes. Moreover, the Town Chairman had tried to rent his own building to the Borough, but had been turned down in favor of the plaintiffs. The Second Circuit reversed a grant of summary judgment for defendants, holding that a jury could find the Town acted arbitrarily if "indefensible reasons such as impermissible political animus" motivated its actions. 863 F.2d at 216; see also Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 46 (1st Cir. 1992) (describing the unique factual background set forth above).

It is clear then that Brady does not stand for the proposition that a town's failure to

---

[9] There is presently no dispute that federal preemption, alone, does not create a private right of action in this case. See, e.g., NextG Networks of N.Y., Inc. v. City of New York, 513 F.3d 49, 53 (2d Cir. 2008) (telecommunications provider has no right of action for damages under § 1983 for preemption violations).

heed preemption principles is necessarily "outrageous," or even that such a determination should be left to the fact-finder. It simply found, based on the unique factual circumstances of that case, that a jury could find the defendant's actions to be arbitrary.

Similarly, the court in Town of Riverhead, also a land-use case, similarly found that the plaintiff sufficiently alleged the arbitrary prong of a substantive due process claim. 725 F. Supp. 2d at 338.  But, as in Brady, the defendants in Riverhead acted in "bad faith" and impermissibly attempted to thwart the plaintiffs planned use of its land. See id. (discussing defendant's "threat[ening]" and "coerc[ive]" behavior).

By contrast, it appears from the complaint here that the parties worked together during the process, and there is nothing to suggest that the Town was motivated by political animus or that it intentionally thwarted National Fuel's efforts to build the compressor station. To the contrary, the Town eventually issued a Building and Special Use Permit, allowing the compressor station to be built.

In the end, "substantive due process is an outer limit on the legitimacy of governmental action." Natale, 170 F.3d at 263. And it does not forbid governmental actions that are "merely 'incorrect or ill-advised.'" Riverhead, 725 F. Supp. 2d at 338  (quoting Ferran v. Town of Nassau, 471 F.3d 369–70 (2d Cir. 2006)). Viewing the allegations in a light most favorable to National Fuel, the Town's issuance of a Permit, inconsistent with the FERC Certificate, was possibly "incorrect," but it was not "outrageously arbitrary." The Town's motion, on this ground, is therefore granted.

### 3.    The Takings Clause

The Takings Clause of the Fifth Amendment provides that no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V.

There are two distinct types of takings claims: physical and regulatory. See Meriden Trust & Safe Deposit Co. v. FDIC, 62 F.3d 449, 454 (2d Cir.1995). A physical taking, the more recognizable of the two, occurs when the government physically takes possession of a property interest. By contrast, "[t]he gravamen of a regulatory taking claim is that the state regulation goes too far and in essence 'effects a taking.'" Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006) (quoting id.).

National Fuel does not argue that it was subject to a physical taking; it contends that the Town effected a regulatory taking by "prevent[ing] the operation of the compressor station as approved by FERC and deny[ing] National Fuel of [sic] an economically viable use of its property." (Am. Compl., ¶ 88.)

A regulatory taking claim, however, "is unripe where 'a remedy potentially is available under the state constitution's provision.'" Vandor, Inc. v. Militello, 301 F.3d 37, 39 (2d Cir. 2002) (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 380 (2d Cir.1995). In Vandor, the Second Circuit affirmed a dismissal of a takings claim because the plaintiff had not first brought an Article 78 proceeding under New York law. Indeed, "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) (emphasis added). Accordingly, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. In other words, "to withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and denied." Allocco Recycling, Ltd. v.

-16-

Doherty, 378 F. Supp. 2d 348, 361 (S.D.N.Y. 2005) (quoting New Holland Vill. Condo. v. Destaso Enters. Ltd., 139 F. Supp. 2d 499, 504 (S.D.N.Y. 2001)).

National Fuel does not argue that it unsuccessfully sought compensation through state procedures. Instead, it contends that this Court is obligated to hear its takings claim under this Court's supplemental jurisdiction. In effect, it asks this Court to put itself in the novel position (National Fuel, again, can point to no other case where this has occurred) where it would hear its state claim, and then potentially move to its federal regulatory taking claim.

Attempting to support this contention, National Fuel notes that in Vandor the court had already dismissed all other federal claims; therefore, "it had no reason to determine whether the plaintiff's taking claim was subject to the court's supplemental jurisdiction." (Pl.'s Mem. in Opp., at 22; Docket No. 12-1.)

As noted above, the Vandor court suggested that the plaintiffs could have brought a state Article 78 proceeding; National Fuel does not reject this suggestion, and Article 78 appears to be the proper mechanism for such relief in New York. See TZ Manor, LLC v. Daines, No. 08-CV-3293 (KMK), 2009 WL 2242436, at *7 (S.D.N.Y. July 28, 2009) ("In an Article 78 proceeding to remedy an alleged taking under New York law, [] just compensation would obviously be the primary relief sought, and that type of relief is often sought in such proceedings") (citing Ward v. Bennett, 79 N.Y.2d 394, 583 N.Y.S.2d 179, 592 N.E.2d 787, 789 (1992);  Huntington Hills Assocs. v. Town of Huntington, 49 A.D.3d 647, 852 N.Y.S.2d 786, 787 (App. Div. 2008) (Kent Acres Dev. Co. v. City of New York, 41 A.D.3d 542, 841 N.Y.S.2d 108, 110 (App. Div. 2007)).

Although the Vandor court may not have had such an opportunity, several federal

courts in this Circuit have had occasion to determine whether jurisdiction over an Article 78 claim is proper. They are in near unanimous agreement: they refuse to hear the claim. See Cartagena v. City of New York, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) ("The cases that have addressed the issue have consistently declined to exercise supplemental jurisdiction over Article 78 claims"); see also Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005); Beckwith v. Erie County Water Auth., 413 F. Supp. 2d 214, 226 (W.D.N.Y. 2006) ("This court has no original or supplemental subject matter jurisdiction over [plaintiff's] Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court"); Birmingham v. Ogden, 70 F. Supp. 2d 353, 372 (S.D.N.Y.1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims"); Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y.1999) ("[W]e see no reason to exercise [the court's] discretion [to exercise supplemental jurisdiction] by adjudicating a purely state procedural remedy"); Lucchese, 22 F. Supp. 2d at 258 ("Article 78 proceedings were designed for the state courts, and are best suited to adjudication there"); Herrmann v. Brooklyn Law School, 432 F. Supp. 236, 240 (E.D.N.Y. 1976) ("[T]his special proceeding designed to accommodate to the state court system is best suited to that system.").

The Court in Cartagena concluded  that it did "not have the discretion to exercise supplemental jurisdiction over an Article 78 claim" because "Article 78 specifies precisely where an Article 78 proceeding may be brought" – in state supreme court. 257 F. Supp. 2d at 710. The validity of this approach is in some dispute. See Casale v. Metro. Transp. Auth., No. 05 CIV. 4232 (MBM), 2005 WL 3466405, at *6 (S.D.N.Y. Dec. 19, 2005) ("State

law may direct that '[a] proceeding under this article shall be brought in [state] supreme court,' but . . . if such a directive could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of the federal judiciary.").

Regardless of the reasoning, however, the ultimate conclusion should remain the same. As cogently explained by the court in <u>Morningside Supermarket Corp. v. New York State Dept. of Health</u>:

> Even assuming that a federal district court could properly exercise supplemental jurisdiction over an Article 78 claim, the court has discretion under 28 U.S.C. § 1367(c) to determine whether to hear those claims. Section 1367 provides that a court "may decline to exercise supplemental jurisdiction" if there are "compelling reasons for declining jurisdiction." The very nature of an Article 78 proceeding presents such compelling reasons.

432 F. Supp. 2d 334, 346-47 (S.D.N.Y. 2006) (internal citations, some quotation marks, and modifications omitted). Then, referring to precedent in this Circuit, the court detailed those reasons:

> An Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in federal district court in a number of ways; it is a purely state procedural remedy; [and] accepting supplemental jurisdiction over such claims requires a federal court to usurp the statutory authority bestowed upon the New York state courts.

<u>Id.</u> (internal citations and quotation marks omitted.)

Thus, acting with or without discretion, district courts in this Circuit refuse to hear Article 78 claims. By summary order, this conclusion has been ratified by the Second Circuit. <u>See</u> <u>McNamara v. Kaye</u>, 360 F. App'x 177, 177 (2d Cir. 2009) (citing <u>Morningside</u> and <u>Cartagena</u>, and dismissing Article 78 claim for lack of subject-matter jurisdiction). It will

therefore will be adopted by this Court as well.

Accordingly, National Fuel's takings claim is dismissed for its failure to allege that it unsuccessfully sought compensation through the courts of New York.[10]

## IV. CONCLUSION

The Town Board is dismissed because claims against it are redundant of those against the Town itself. Further, National Fuel has failed to state a due process claim, as it received adequate process and the Town's actions were not "outrageously arbitrary." Finally, National Fuel's regulatory taking claim is dismissed for its failure to allege that it unsuccessfully sought compensation through the procedures available under New York law.

---

[10]This conclusion is premised on the assumption that National Fuel would be required to bring an Article 78 proceeding, as opposed to a claim in one of New York's general jurisdiction courts. But even if it were not relegated to an Article 78 proceeding, see Manocherian v. Lenox Hill Hosp., 84 N.Y.2d 385, 392, 643 N.E.2d 479 (1994) (considering regulatory taking claim under New York's Constitution), the outcome would remain the same.

The rationale motivating the Court in Williamson County compels this result. There, the Supreme Court created the rule that requires claimants to first seek compensation in a state action before their federal takings claim could be deemed ripe for review. It did do because "the State's action [] is not 'complete' until the State fails to provide adequate compensation for the taking." Williamson Cnty., 473 U.S. at 195. Thus, if this Court were to sit as a state court, it would hinder New York's ability to remedy or "complete" the alleged taking.

Moreover, it would be a strange scenario indeed if a federal takings claim could withstand a motion to dismiss for failure to utilize state remedies, then ripen through the Court's supplemental jurisdiction, and finally be adjudicated under the court's original jurisdiction. This Court has no trouble concluding that this is not what Supreme Court envisioned in crafting this rule. Therefore, even if it this Court could exercise its supplemental jurisdiction, dismissal is appropriate under 28 U.S.C. § 1367(c)(4).

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant Town Board of the Town of Wales

Motion to Dismiss (Docket No. 10) is GRANTED.

SO ORDERED.

Dated:      October 23, 2012
            Buffalo, New York

/s/William M. Skretny<br>
WILLIAM M. SKRETNY<br>
Chief Judge<br>
United States District Court