UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATIONAL FUEL GAS SUPPLY
CORPORATION,

          Plaintiff,
v.

TOWN OF WALES,

          Defendants.

**DECISION AND ORDER**
12-CV-034S

## I. INTRODUCTION

Plaintiff, National Fuel Gas Supply Corporation, brings this action against Defendant, the Town of Wales, arguing that a permit issued by the Town that attempts to regulate a natural gas compressor station is preempted by federal law.

This Court has already resolved a motion to dismiss filed by the Town of Wales. In that Decision and Order, this Court dismissed (1) the Town Board as a party, (2) National Fuel's due process claim, and (3) National Fuel's regulatory taking claim.

But the crux of this action – National Fuel's request for injunctive and declaratory relief on preemption grounds – was not addressed by the Town's motion to dismiss. Now, National Fuel moves for summary judgment seeking that relief. The Town opposes the motion.

For the following reasons, National Fuel's motion is granted in part and denied in part.

## II. BACKGROUND

**A.    Facts**

The facts, as alleged in the National Fuel's amended complaint, were spelled out in this Court's previous Decision and Order. Although the case is now before this Court on a motion for summary judgment, the facts have not materially changed, and, for the most part, will be reproduced here.

In furtherance of its "Northern Access Project," National Fuel planned to build a compressor station in the Town of Wales, New York. (Am. Compl. ¶ 7; Docket No. 6.) To that end, in March of 2011, National Fuel filed an application with the Federal Energy and Regulatory Commission ("FERC") for a Certificate of Public Convenience ("Certificate"). (Id.; Pl.'s Stmnt. ¶ 1; Docket No. 16-2.[1]) Under the Natural Gas Act, such a certificate is a prerequisite to construction. See 15 U.S.C. § 717f(c)(1)(A). The Compressor Station will pump natural gas from National Fuel's pipeline into a higher pressure pipeline operated by Tennessee Gas Pipeline. (Id. at 4.)

According to National Fuel, "as a matter of cooperation [with the Town], and in attempt to accommodate the local zoning process," it began the application process for a Special Use Permit required by the Town. (Am Compl., ¶ 12.) To that end, on July 18, 2011, National Fuel submitted to the Town a Special Use Permit application and an Environmental Assessment Form regarding the Compressor Station. (Pl.'s Stmnt., ¶ 5.)

In the meantime, on October 20, 2011, FERC issued the Certificate. (Id., ¶ 20.) It included the following noise limitation:

---

[1]Local Rule 56(a)(2) provides that, on a motion for summary judgment, the parties must submit statements of undisputed facts. National Fuel's statement will be referred to as "Pl.'s Stmnt."

> If the noise attributable to the operation of the East Aurora
> Compressor Station at full load exceeds an $L_{dn}$ of 55 dBA at
> any nearby NSAs,[2] National Fuel shall file a report on what
> changes are needed and shall install additional noise controls
> to meet the level within one year of the in-service date.

(Id., ¶ 21; FERC Ceritifciate, attached as Ex. G of Kasprzak Aff; Docket No. 16-10. )

The FERC Certificate also instructs:

> National Fuel shall make all reasonable efforts to ensure its
> predicted noise levels from the East Aurora Compressor
> Station are not exceeded at nearby NSAs and file a noise
> survey showing this with the Secretary no later than 60 days
> after placing the East Aurora Compressor Station in service.

(Pl.'s Stmnt., ¶ 22; FERC Certificate.)

Finally, it provides:

> Any state or local permits issued with respect to the
> jurisdictional facilities authorized herein must be consistent
> with the conditions of this certificate. The Commission
> encourages cooperation between interstate pipelines and local
> authorities. However, this does not mean that state and local
> agencies may prohibit or unreasonably delay the construction
> or operation of facilities approved by this Commission.

(Pl.'s Stmnt., ¶ 23; FERC Certificate.)

Eventually the Town issued a proposed Permit, but National Fuel maintained it was inconsistent with the Certificate. (Pl.'s Stmnt., ¶ 21.) For examcalople, Special Condition No. 3 of the proposed Permit required that the "noise related to the compressor unit venting shall be at a maximum of 45 dBA at the nearest NSA to the compressor station." (Id., ¶ 28.) This allegedly imposed a stricter requirement than Certificate's 55 dBA level.

---

[2]NSA, an abbreviation used throughout the Certificate and the Permit, refers to Noise Sensitive Areas.
  dBA is shorthand for a method of measuring noise though decibels.
  $L_{dn}$ refers to a day-night average sound level.

Further, Special Condition No. 4 of the proposed Permit stated that "predicted noise levels from the compressor station shall not be exceeded at nearby NSAs." (Id., ¶ 30.) According to National Fuel, this is significantly more stringent than the Certificate's requirement that National Fuel "shall make all reasonable efforts" to ensure that the predicted noise levels are not exceeded at the nearby NSAs.

Negotiations continued, and on December 9, 2011, National Fuel proposed several changes to the Permit. (Id., ¶ 32.) But the final Permit still contained, in Condition No. 3, a requirement that the total sound level at the nearest NSA be no more than 3 dBA over background ambient noise, and it did not revise Special Condition No. 4 to state that "all reasonable efforts" would be used to achieve the predicted noise levels from the Compressor Station. (Id., ¶ 35–42.) The Permit also states that "[a]ny violation of the Permit or any other applicable law, code, rule or regulation of any government or department shall subject this Permit to suspension or revocation in the discretion of the Town Board." (Id.)

In the months following, FERC granted National Fuel permission to begin construction of the compressor station, and the Town issued a building permit, which incorporated the Special Use Permit. (Am. Compl., ¶¶ 58–60.)

On April 23, 2012, National Fuel commenced construction on the compressor station.[3] (Id., ¶ 62.)

**B.    Procedural History**

National Fuel filed a complaint in this Court in January 12, 2012. (Docket No. 1.)

---

[3]There is no indication that the circumstances of this litigation have yet hindered construction or operation of the compressor station.

Several months later, on May 3, 2012, it amended its complaint. (Docket No. 6.) On May 24, 2012, the Town moved to partially dismiss the amended complaint. (Docket No. 10.) This Court resolved the motion to dismiss on October 23, 2012. The next month, National Fuel filed the current motion for summary judgment.

## III. DISCUSSION

### A. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion

Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

Regarding National Fuel's motion for a declaratory judgment, "[t]he merits" of such a motion "may be properly asserted by the parties in a motion for summary judgment." Allstate Ins. Co. v. Martinez, No. 3:11CV574 VLB, 2012 WL 1379666, at *4 (D. Conn. Apr. 20, 2012). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S. Ct. 2137, 132 L .Ed. 2d 214 (1995). Under that Act, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

Finally, summary judgment is also "a permissible vehicle in which to grant a permanent injunction." U.S. S.E.C. v. Monarch Funding Corp., No. 85 CIV. 7072 (LBS), 1996 WL 348209, at *9 (S.D.N.Y. June 24, 1996) (citing S.E.C. v. Research Automation Corp., 585 F.2d 31, 36 (2d Cir. 1978)).

> A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

Entergy Nuclear Vermont Yankee, LLC v. Shumlin, --- F.3d ---- No.12-707-CV L, 2013 WL 4081696 (2d Cir. Aug. 14, 2013) (quoting Monsanto Co. v. Geertson Seed Farms, --- U.S.

----, 130 S. Ct. 2743, 2756, 177 L. Ed. 2d 461 (2010)). "Generally, the movant must also show the threat of a continuing violation in order to obtain injunctive relief." Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 119 (E.D.N.Y. 2010) (citing Boisson v. Banian Ltd., 280 F.Supp.2d 10, 15 (E.D.N.Y. 2003)).

**B.      National Fuel's Motion**

Through its motion for summary judgment, National Fuel seeks (1) a declaration that portions of the Town's Permit are inconsistent with the FERC certificate, and (2) a permanent injunction, on the grounds that federal law preempts the local regulation, precluding the Town from enforcing the Permit to the extent that it is inconsistent with the Certificate.

The Town raises essentially two arguments in an effort to defeat summary judgment. First, it maintains that the Certificate is not inconsistent with the Permit. Second, it argues that National Fuel either waived its argument or should be estopped from asserting that federal law preempts the Permit.

As an initial matter, where "matters sought to be regulated by [The Town] were [] directly considered by the FERC, . . . such direct consideration is more than enough to preempt [Town] regulation." Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n of State of N.Y., 894 F.2d 571, 579 (2d Cir. 1990) (citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 108 S. Ct. 1145, 99 L. Ed. 2d 316 (1988)); see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Envtl. Prot., 482 F.3d 79, 90 (2d Cir. 2006) ("Congress wholly preempted and completely federalized the area of natural gas regulation by enacting the N[ational] G[as] A[ct]."). Because there is no dispute that FERC considered and set limits on noise levels in connection with the compressor station, the FERC Certificate preempts

local regulation on the subject. In this sense, the noise-level regulation does not simply have an "indirect effect," as the Town argues in passing, on the compressor station. Rather, the noise levels are specifically and directly regulated by FERC and directly affect the operation of the compressor station. As the same court on which the Town relies held, "In this case, the ordinances and codes at issue are not peripheral regulations that have only an indirect effect on [the] project. Rather, they seek to regulate aspects of the project that are regulated, expressly, by federal law. . . ." Algonquin Lng v. Loqa, 79 F. Supp. 2d 49, 53 (D.R.I. 2000).

This Court further finds, contrary to the Town's argument, that the Permit is plainly inconsistent and in conflict with – and thereby preempted by – the FERC Certificate.

Special Condition No. 3 of the Permit mandates that the Compressor station not exceed 3dBA over "background ambient noise as determined by FERC." The FERC Certificate, on the other hand, requires National Fuel to make "all reasonable efforts" to maintain its "predicted noise levels." The FERC Certificate then continues, "if the noise attributable to the operation of the East Aurora Compressor Station at full load exceeds an $L_{dn}$ of 55dBA at any nearby NSAs, National Fuel shall file a report on what changes are needed and shall install additional noise controls to meet the level."

Although the Town maintains that it arrived at the 3dBA limitation by simply referring to National Fuel's own predicted noise levels (the same noise levels referred to by the FERC), the difference between the two is plain:  FERC requires National Fuel to make reasonable efforts to maintain their predicted noise levels; it requires nothing more unless the level exceeds 55dBA. The Permit compels it to stay within 3dBA of its predicted noise levels, a violation of which "subject[s] this Permit to suspension or revocation." Thus,

regardless of what the actual background noise happens to be, the Permit is inconsistent with the FERC. Further discovery, as requested by the Town to help resolve purported questions of fact, would shed no light on this conspicuous inconsistency.

The same is true for Special Condition No. 4, which provides that "National Fuel *shall* ensure that its predicted noise levels from the compressor station are not exceeded at nearby NSAs." (Emphasis added.) But again, FERC requires only that National Fuel "make all reasonable efforts" towards this goal. And again, a violation of this condition "subject[s] th[e] Permit to suspension or revocation." Without a permit, the Town can "institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, use or division of land." See N.Y. Town Law § 268(2). Under the FERC Certificate, the consequences are far less severe. First, it provides an outer limit of 55dBA, and only if that limitation is exceeded must National Fuel then "file a report on what changes are needed and [] install additional noise controls to meet the [55dBA] level within one year." Unlike the Permit, complete revocation is not contemplated by FERC.

****

The Town's second argument is equally unavailing.

It points out that National Fuel's Vice President Ronald C. Kraemer informed the Town and its residents that, during the course of a revised noise survey, it was able to reduce the noise level to "twelve decibels below the required level of 55 decibels." It relies on statements like this in arguing that National Fuel should be equitably estopped from asserting preemption.

Equitable estoppel is applicable where "(1) the defendant made a definite

misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment. Kavowras v. New York Times Co., 328 F.3d 50, 56 (2d Cir. 2003) (internal citations and quotation marks omitted).

But here the Town has not identified any representations made by National Fuel that indicate it would not assert or rely on preemption principles. And, as National Fuel points out, it did not even commit to a specific noise level, only indicating that it had achieved as much in a study, all the while noting that the *required* level was that set out by FERC. Further, as at least one court has pointed out, even if National Fuel could somehow be said to have waived its rights to rely on FERC preemption, it is "doubt[ful]" that the Town could "'thereby obtain any ability to regulate in th[e] areas . . . Congress has reserved . . . to itself.'" Entergy Nuclear Vermont Yankee, LLC v. Shumlin, 838 F. Supp. 2d 183, 240 (D. Vt. 2012) (quoting Me. Yankee Atomic Power Co. v. Bonsey, 107 F. Supp. 2d 47, 50 (D. Me.2000)), *rev'd on other grounds*, 2013 WL 4081696. Or, in other words, it is doubtful whether preemption claims are waiveable at all. Accordingly, whether considered under the principles of waiver or estoppel, the Town's argument falls short, and this Court will grant National Fuel's motion for a declaratory judgment.

This Court, however, finds a permanent injunction to be unnecessary. With a declaration that the noise-level limitations in the FERC certificate preempt Special Conditions Nos. 3 and 4 of the Permit, the dispute between the parties is resolved. And there is no evidence tending to show that the Town will endeavor to enforce the Permit despite this Order. In that sense, National Fuel has not shown that it will suffer irreparable harm or that, without an injunction, there is a threat of a continuing violation.

## IV. CONCLUSION

"Matters sought to be regulated by [The Town] [that] were [] directly considered by the FERC" are preempted. Nat'l Fuel Gas Supply Corp., 894 F.2d at 579. The noise regulations in the Permit are such matters, and are therefore preempted. This Court finds the Town's arguments seeking to evade preemption to be unavailing. Accordingly, it grants National Fuel's motions for summary judgment and for a declaratory judgment. This Court, however, denies National Fuel's motion for a permanent injunction because it has not shown that, absent an injunction, it is subject to irreparable harm or a continuing violation.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 16) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff's Motion for a Permanent Injunction is DENIED.

FURTHER, that Plaintiff's Motion for a Declaratory Judgment is GRANTED.

FURTHER, that, as articulated above, the portions of Special Conditions Nos. 3 and 4 of the Town of Wales' Special Use Permit identified by this Court are inconsistent with and interfere with the FERC Certificate and National Fuel's construction and operation of the East Aurora Compressor Station, as authorized by the FERC Certificate. The portions of those conditions are therefore preempted by federal law, rendering them legally null.

FURTHER, the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: October 21, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court